## Wolf's Case.

*Poor laws—Dependent children—Mother and child—Juvenile court—*
*Acts of April 23, 1903, P. L. 274, May 8, 1913, P. L. 177, July 12, 1913,*
*P. L. 711, and July 25, 1913, P. L. 1039.*

There is nothing in the Acts of April 23, 1913, P. L. 274, May 8, 1913,
P. L. 177, July 12, 1913, P. L. 711, and July 25, 1913, P. L. 1039, con-
ferring jurisdiction on the municipal court of Philadelphia county to
make an order on the county commissioners for the payment of a given
sum per week for the support of dependent children remaining in the
home of their widowed mother.

Argued May 12, 1914. Appeal, No. 98, Oct. T., 1914,
by Robert J. Moore et al., County Commissioners of
Philadelphia County, from decree of the Municipal Court
of Philadelphia County, directing respondents to pay
money in petition of Lizzie Wolf. Before RICE, P. J.,
ORLADY, HEAD, PORTER, HENDERSON, KEPHART and
TREXLER, JJ. Reversed.

Petition for assistance to help to support five minor
children.

The court made the following order:
And now, to-wit, March 16, 1914, after hearing evi-
dence and allegations, it is adjudged that Florence Wolf,
Anna Wolf, Lottie Wolf, Charles Wolf and Alberta
Wolf, are committed to the custody of their mother to
remain with her in her home under the care and super-
vision of the chief probation officer of the juvenile
court, and an order is made on the county commissioners
of Philadelphia county for the payment to the chief
probation officer for the support of said children of
$2.00 for each child per week, until the further order of
the court.

*Error assigned* was the order of the court.

*Ira J. Williams*, of *Simpson, Brown & Williams*, for appellant.

*Charles Edwin Fox*, assistant district attorney, with him *Samuel P. Rotan*, for appellee.

OPINION BY RICE, P. J., July 15, 1914:

The mother of these five children, the oldest of whom was nine years of age, filed her petition in the municipal court of Philadelphia county, setting forth that she was a resident of the county; that the father of the children was dead and they were dependent persons; and that, quoting the language of the petition, "the mother would like to have assistance to help support the said children wants to have them in her care." She prayed the court to inquire into their alleged dependency and to make appropriate order in the premises. After hearing, the court made an order committing the children to the custody of their mother, to remain with her in her home under the care and supervision of the chief probation officer of the juvenile court, and directing that the county commissioners pay to him, for the support of the children, $2.00 for each child per week until the further order of the court. The matters assigned for error in this appeal by the county commissioners are this order and the court's subsequent dismissal of their petition to vacate it.

Under the act creating it, the municipal court has exclusive jurisdiction in all proceedings concerning dependent, delinquent, or neglected children, as defined by existing laws relating thereto, and these laws are applicable to all such proceedings in the court: Act of July 12, 1913, P. L. 711. The first of these existing laws to be noticed is what is commonly called the Juvenile Court Act (Act of April 23, 1903, P. L. 274). This defined the powers of the court of quarter sessions, and, therefore, defines the powers of the municipal court with reference to the care, treatment, and con-

trol of the classes of children above referred to, and declares that, for the purposes of the act, the words "dependent child" and "neglected child" shall mean any child who is destitute, homeless, abandoned, or dependent upon the public for support, or who has not proper parental care or guardianship. The powers of the court may be called into exercise in several ways, and, amongst them, upon the petition of any citizen resident of the county, setting forth that a child is neglected, dependent, or delinquent, "and is in need of the care and protection of the court." The significance of these quoted words will be referred to later. Section 4 provides that at the hearing the judge or judges shall determine, after an inquiry into the facts, what order for the commitment and custody and care of the child the child's own good and the best interests of the state may require; and may commit such child to the care of its parents, subject to the supervision of a probation officer, or to some suitable institution, or the care of some reputable citizen of good moral character, or to the care of some training school, or to an industrial school, or the care of some association willing to receive it; "and in either such case it shall be within the power of the court to make an order upon the parent or parents of any such child to contribute to the support of the child, such sum as the court may determine." The only clause of the section which relates to the support of the child is that which we have indicated by quotation marks, and that is inconsistent with the idea that power to compel the county to pay to the parents for the support of the child such sum as the court shall designate arises by necessary implication where, as was done in this case, the child is committed to their care subject to the supervision of a probation officer. A review of the pertinent provisions of the act of 1903 and its amendments prior to 1913, having due regard to the main object and intent of the statute, leads to the conclusion that they do not confer authority

for making an order on the county commissioners for the payment of a given sum per week for the support of a dependent child remaining in the home of its mother.

There remain to be considered the Act of May 8, 1913, P. L. 177, and the Act of July 25, 1913, P. L. 1039.

By its express terms the former relates to cases where an order for the payment of the maintenance of the child and the expense of the commitment is made upon the proper county "in pursuance of the laws of this commonwealth." It does not purport to enlarge the powers of the court to make such order upon the county, but only to define more clearly and declare explicitly the liability of the county to the association, society, person, or family in favor of whom lawful orders have been made, and to give the county full recourse over against the parties, persons, or poor district properly charged with the maintenance of the child under the laws of the commonwealth. For this reason alone the act does not apply to the case in hand.

The sole purpose and effect of the act of July 25, 1913, were to extend the application of sec. 6 of the act of 1903 (which related only to delinquent children) to dependent, neglected, and incorrigible children. As that section stands amended, it provides that "the court may continue the hearing from time to time" and, amongst other things, may authorize the probation officer to "board out" the child in some suitable family home in case provision is made by voluntary contribution or otherwise for the payment of the board, "or may direct that the payment of the board of such child be made by the proper county, until suitable provision may be made for the child in a home without such payment." In a case which arose in 1913 in the court of quarter sessions of Philadelphia county (In re Winifred McKenna et al.), Judge KINSEY, in a well-considered opinion, construed this provision to contemplate only that the child shall be cared for temporarily by such

payment until suitable provision shall be made where there is to be no payment. Viewing the section as a whole, this seems to us to be the correct construction. Moreover, the particular part of the provision to which we have referred should be read in connection with what immediately precedes. It would be a very strained construction of the words used by the legislature, to say that a child left in the home of its parents is being boarded out. We therefore conclude that the law upon the precise question under consideration was not changed by the two acts of 1913 above referred to.

The conclusion to which we have been led by consideration of the language of the statutes is confirmed and strengthened by consideration of the general legislative purpose in the enactment of the Juvenile Court Act and its supplements and amendments, and the act commonly called the Mothers' Pension Law, which was enacted by the legislature of 1913. To say the least, the primary purpose of the juvenile court legislation was not to aid the poor. As shown by its provisions, as well as by its preamble, the broad general purpose the legislature had in view was to guard children from association and contact with crime and criminals, to subject children lacking proper parental care or guardianship to a wise care, treatment, and control that their evil tendencies may be checked and their better instincts may be strengthened, and, to that end, to clearly distinguish the powers of the courts in respect to the care, treatment, and control over the classes of children mentioned, from the powers exercised in the administration of the criminal law. 'In the administration of such a law, narrow and refined construction of its words, without regard to its true spirit, should not be sought for. Nor should regard for the niceties and formalities of practice and pleading be carried to such extent as to defeat, in particular cases, the benign purpose of the legislature. But matters which the legislature has deemed substantial in defining

the jurisdiction of the court can no more safely be dis-
regarded in the administration of such a law than they
can in the administration of any other. In view of the
legislation in pari materia to which we have alluded
there is no occasion or justification for straining the
language of the juvenile court legislation to reach cases
like the present, very meritorious as they are.

There is another narrower view which may be taken
of this particular case. We have alluded to the petition
which is at the foundation of the proceeding and to the
statutory rule as to what such petition shall contain.
We recur to the subject, not for the purpose of laying
ground for a decision that the proceeding must fail
merely because the petition does not strictly conform
to the words of the act, but for another purpose. We
agree with the learned district attorney that a depend-
ent child, as defined, need not be both homeless and
dependent upon public support. But even if it be
conceded that children dependent upon their widowed
mother, who is poor and needs assistance to support
them, are destitute children, and therefore within the
definition of dependent children, it does not necessarily
follow that they need the care and protection of the
juvenile court. This will be apparent when it is re-
membered that dependent children may be placed under
the special control of that court upon the petition of
any citizen resident in the county. Doubtless, the peti-
tion here presents the truth of the case, which is that
the widowed mother needs assistance in the support of
these children, not that they need the care and protec-
tion of the court. It is in the highest degree desirable
that they should be kept together in the home which
she has provided for them. Far be it from us to assert
that the legislature has not power, by a general law,
to provide for rendering assistance out of the public
funds in such cases. But it is for the legislature, not
the courts, to determine upon what terms the public
charity of the commonwealth shall be administered. The

Mothers' Pension Act of 1913 would seem to provide for such assistance under careful safeguards. Whether it is adequate or not is a question to be addressed to the legislature. All we decide is that the juvenile court legislation does not authorize the making of the order which is complained of in this case.

Strictly speaking, the county commissioners are concerned only in that part of the order which relates to the payment to be made by them out of the county funds; but, as the validity of the order has been discussed in its entirety, we think it may be safely assumed that the commonwealth does not desire to have it treated piecemeal in the final judgment to be entered on this appeal.

The assignments of error are sustained and the order of May 16, 1914, is reversed and set aside.