## Colucci Minors' Estates.

*Practice, O. C.—Guardian and ward—Right of county to reimbursement for support of dependent child out of child's estate—Act of May 8, 1913.*

1. Under the Act of May 8, 1913, P. L. 177, the guardian of a minor who has been committed by the Municipal Court to a charitable institution is not liable to reimburse the county commissioners out of the minor's estate for his support in such institution in the absence of a contract to that end.

2. The act confers no authority upon the Municipal Court to make such an order upon the guardian.

Krause's Estate, 26 Dist. R. 104, overruled.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1917, No. 513.

*Robert T. McCracken* and *Roberts & Montgomery,* for exceptions.

*William T. Connor,* contra.

HENDERSON, J., Oct. 27, 1923.—Four of these minors were committed by the Municipal Court of Philadelphia to charitable institutions, by which they were supported and to whom the County Commissioners paid various sums of money, aggregating $2746.79, the board paid being at the rate of from $2 to $3.50 per week. This claim would take the entire fund, being about treble the amount due these four minors, and it was conceded the rate charged for the board was reasonable.

It appeared that on Oct. 2, 1918, the Municipal Court made an order on the guardian for the support of these minors, directing it to pay $1195 for maintenance up to that date, an amount in excess of their estate, and under which order $927.79 was awarded to the County Commissioners under the authority of Krause's Estate, 26 Dist. R. 104, by which, notwithstanding his doubt, the auditing judge felt bound.

Exceptions were filed so that the question might be fully considered by the court *in banc.*

We must now determine whether the legislature has by appropriate legislation subjected a guardian appointed by this court to the authority of any other court to enter orders against it.

In Killion's Estate, 3 Brewst. 235, it was held that at common law any one contributing to the support of a minor without a contract did so at his peril.

In Call *v.* Ward, 4 W. & S. 118 (1842), it was held that an action of *indebitatus assumpsit* would not lie against a guardian for necessaries supplied to his ward without his consent. In so holding, Judge Rogers said: "If, therefore, a parent refuses to furnish his child with necessaries, a stranger may do so and charge the parent with the price upon an implied *assumpsit;* but this is not true with respect to a guardian, who is only liable personally on a contract. And the difficulty in the way of the plaintiff is that there is neither a

3 D. & C.

contract, express or impiled, for the case finds that the guardian always refused to allow the plaintiff anything for the maintenance of the children, alleging that he was only guardian to take care of the estate of the minors. We have nothing to do with the reason; it is enough that he refused to become bound for the expense of their maintenance. But it may be asked, what is to be done where the guardian refuses to furnish necessaries for his ward? Miserable, indeed, would be his condition if he might run the risk of starvation with a plentiful estate. The remedy is by application to the court, who will dismiss the guardian for neglect of duty, or the infant may himself purchase necessaries; or if of such a tender age that he cannot contract himself, a third person may supply his wants. But then the guardian is not liable, but the infant. In that case, suit must be brought against the infant, who can appear only by guardian, and not against the guardian himself, and the judgment, when rendered, is against the infant, and execution can only be had of the estate of the infant."

Trickett on Guardians, § 166, is to the same effect: "Creditors of the ward, who have become such by dealings for his benefit with the guardian, may present their demands at the audit and, if they are found valid, payment to them will be decreed out of the fund in the guardian's hands. In a case in which an attorney, who had been employed by the guardian to sue in ejectment for a lot of ground belonging to the ward, presented his claim for fees, at the adjudication, Green, J., after citing the Act of March 29, 1832, and that of June 16, 1836, with respect to the jurisdiction of the Orphans' Court, remarked: 'It seems to us that these acts contain all the elements of a jurisdiction which will enable Orphans' Courts to take cognizance of and decide claims like the present, where the services were rendered to the ward's guardian, and a part of the estate of the ward is in the hands of the guardian, whether it is the part recovered by the services in question or not. There is no legal or logical necessity apparent to us that the estate recovered shall be embraced in the account of the guardian in order to give jurisdiction to the Orphans' Court to hear and determine a question of compensation for professional services rendered in recovering that estate. . . . It seems to us that upon plain principles the jurisdiction to entertain claims for professional services rendered by attorneys to the estates of minors upon contracts with their guardians ought to reside in the courts which have control of the accounts of the guardian.' There is nothing peculiar to attorney's services for the ward that entitles the claimant to the award of his claim by the Orphans' Court. Other services are as essential to the ward, as legal and as properly cognizable in the Orphans' Court. Indeed, when rendered at the instance of the guardian for the ward, they are exclusively cognizable by that court. The assets of the ward cannot be reached through a judgment in the Common Pleas."

In Krause's Estate, Judge Anderson based the decision on the provisions of the Act of May 8, 1913, P. L. 177. That act provides: "Where any neglected or dependent child is or shall be committed to the care and custody of any association, society, person, or family, by any court, and an order for the payment of the maintenance of the child and the expense of such commitment is made upon the proper county, in pursuance of the laws of this Commonwealth, the county from which such child has been committed to the said association, society, person, or family, shall be liable to the said association, society, person, or family, for the maintenance of the said child and all expenses connected therewith: Provided, that the county shall in all cases have full recourse to recover all expenses incurred in behalf of said child so

committed from the parties or persons or poor district properly charged therewith under the laws of this Commonwealth."

The Act of April 23, 1903, § 4, P. L. 274, gives the Courts of Quarter Sessions full power in all proceedings affecting the treatment and control of dependent, neglected, incorrigible and delinquent children under the age of sixteen, and provides that "it shall be within the power of the court to make an order upon the *parent* or *parents* of any such child to contribute to the support of the child such sum as the court may determine."

The Act of July 25, 1913, P. L. 1039, has been held not to enlarge the jurisdiction of the courts or of the county commissioners. In Wolf's Case, 58 Pa. Superior Ct. 260 (1914), President Judge Rice said: "There remain to be considered the Act of May 8, 1913, P. L. 177, and the Act of July 25, 1913, P. L. 1039. By its express terms, the former relates to cases where an order for the payment of the maintenance of the child and the expenses of the commitment is made upon the proper county 'in pursuance of the laws of this Commonwealth.' It does not purport to enlarge the powers of the court to make such order upon the county, but only to define more clearly and declare explicitly the liability of the county to the association, society, person, or family, in favor of whom lawful orders have been made, and to give the county full recourse over against the parties, persons or poor district properly charged with the maintenance of the child under the laws of the Commonwealth."

By the Act of June 17, 1915, § 1, P. L. 1017, this jurisdiction is transferred to the Municipal Court.

No statute has been cited to us giving the Municipal Court any jurisdiction over a guardian appointed by this court, and we know of none. On the contrary, Mr. Justice Green, in Price's Appeal, 116 Pa. 410-417, said: "But the only court having control of the estates of minors with us is the Orphans' Court, and, hence, that court must be regarded as clothed with all the necessary jurisdiction to hear and determine claims against such estates upon contracts made with guardians. . . ."

This brings us to a consideration of Krause's Estate, which, as above pointed out, was rested on the Act of May 8, 1913, P. L. 177, which Judge Anderson said: ". . . provides that where any dependent child is committed to the care of any association or society by any court and an order made upon the proper county for a payment of the child's maintenance, the county shall be liable to said association or society for the maintenance of the child and all expenses connected therewith, and that the county shall in all cases have full recourse to recover all expenses incurred in behalf of said child so committed from the parties or persons properly chargeable therewith under the laws of the Commonwealth. Primarily, it is the duty of a guardian to maintain his ward out of the estate of the latter in his hands. The person chargeable in the present case, therefore, is the guardian, at least to the extent of the estate in his hands."

The error of this statement lies in the fact that while the guardian may contract for the maintenance of his ward, he is only liable when and if he so contracts, and then only to the extent of the estate in his hands. He has a discretion to exercise in making such provision for maintenance, wherein he must take into consideration all the surrounding circumstances relating to the minors, most of which may not be before the Municipal Court when an order is made upon a guardian not subject to its jurisdiction.

The exceptions are sustained and the adjudication amended accordingly, and, as amended, is confirmed absolutely.