## Premier Cereal & Beverage Company v. Pennsylvania Alcohol Permit Board et al.

*Liquor law—Alcohol permits—Acts of March 27, 1923, and Feb. 19, 1926— Constitutional law—Trial by jury.*

1. Under the Acts of March 27, 1923, P. L. 34, and Feb. 19, 1926, P. L. 16, the Pennsylvania Alcohol Permit Board is not bound by the technical rules of evidence in conducting its hearings, but while mere technical irregularities in the admission or exclusion of testimony by the board will be disregarded by the court, all findings of fact must be based upon competent evidence.

2. The Act of Feb. 19, 1926, P. L. 16, does not violate article 3, section 3, of the Constitution as defective in title.

3. The title is sufficiently comprehensive to indicate that it is a supplement to the Act of March 27, 1923, P. L. 34, and that. it relates specifically to alcoholic liquor.

4. Every one is presumed to know that traffic in alcoholic liquor is prohibited except under highly restricted conditions, and a law, the title of which relates to alcoholic liquors, and prohibits the manufacture, furnishing, traffic in and possession of liquors for beverage purposes, must be held to put one on inquiry as to its particular provisions.

5. The Act of Feb. 19, 1926, P. L. 16, gives the courts ample authority to regulate or control manufacturers of cereal beverages containing more than one-half of 1 per cent. of alcohol, and all such manufacturers must have a permit from the board to conduct such a business.

6. The conferring of discretionary powers upon administrative boards to grant or withhold permission to carry on a trade or business, which is the proper subject of regulation, is within the police power of the State.

7. The Alcohol Permit Board may revoke a permit granted by it, where misconduct is shown.

8. There is no provision in the Acts of March 27, 1923, P. L. 34, and Feb. 19, 1926, P. L. 16, or the rules of the board providing for a jury trial in a proceeding to revoke the permit.

9. The acts are not unconstitutional because they do not provide for a trial by jury.

10. The legislature may withhold trial by jury from new offences and new jurisdictions created by statute and clothed with no common-law power, and also from proceedings in common-law courts out of the course of the common law.

11. The courts will sustain the revocation of an alcohol permit by the board where such action is based upon sufficient evidence and no abuse of discretion is shown.

Appeal from order of Pennsylvania Alcohol Permit Board revoking permit. C. P. No. 5, Phila. Co., Sept. T., 1926, No. 8529.

*James F. Masterson,* for plaintiff.

*Wilhelm F. Knauer,* Special Deputy Attorney-General, for defendant.

MARTIN, P. J., Sept. 15, 1927.—On Aug. 5, 1926, a permit was granted to plaintiff in accordance with the terms of article 6, section *G*, of the General

Rules and Regulations adopted by the Alcohol Permit Board of the Commonwealth of Pennsylvania, under the Act of Assembly of Feb. 19, 1926, P. L. 16, by the terms of which plaintiff was permitted to "manufacture, produce, distill, develop, use in the process of manufacturing, redistill, recover, reuse, store, sell at wholesale, and remove alcohol or alcoholic liquid, produced in the process of operating a brewery or cereal beverage plant, all in full accordance with the laws and regulations of the United States and the Commonwealth of Pennsylvania applying to breweries and manufacturers of cereal beverages."

On Sept. 10, 1926, an order was issued by the Permit Board directing the Premier Cereal & Beverage Company to appear before the Board and show cause why the permit issued to the company should not be revoked and canceled by reason of violating the terms of the permit and the provisions of the law.

Upon a finding by the Board, after notice and hearing, that the Premier Cereal & Beverage Company did, on or about Sept. 2, 1926, unlawfully manufacture, and possessed on its premises, cereal beverage or beer containing more than 4 per cent. of alcohol by volume; and stored on its premises, in two storage tanks, for placing into containers, cereal beverage or beer containing more than 4 per cent. of alcohol by volume, and manufactured and possessed in its racking machine on its premises cereal beverage or beer containing 4.59 per cent. of alcohol by volume; and placed in its racking machine three one-half barrels filled with a cereal beverage or beer containing 4.58 per cent. of alcohol by volume, and manufactured, possessed and placed on the floor in the racking room on its premises 190 half-barrels, including three one-half barrels in racking machines, and sixty-nine whole barrels containing cereal beverage or beer containing more than 4 per cent. of alcohol by volume; that the company, at this brewery, unlawfully manufactured and possessed, and contained in containers, and held in readiness for transportation, and transported, cereal beverages or beer containing more than 4 per cent. of alcohol by volume, and failed to label the containers on its premises, held in violation of the National Prohibition Act and the regulations promulgated thereunder, and the Act of Feb. 19, 1926, P. L. 16, and the general rules and regulations promulgated by the Pennsylvania Alcohol Permit Board, and the Act of March 27, 1923, P. L. 34, to which the Act of Feb. 19, 1926, P. L. 16, is a supplement, an order was issued revoking and canceling the permit granted to the company, and forfeiting the bond given by the company and the Maryland Casualty Company, surety.

This appeal has been taken by the Premier Cereal & Beverage Company, averring that the Board arbitrarily and without legal authority revoked the permit; that the Act of Feb. 19, 1926, P. L. 16, is unconstitutional and offends against article III, section 3, of the Constitution of the State of Pennsylvania; that the Act of Feb. 19, 1926, does not embrace within its provisions authority for the proceedings hereunder conducted, in that it was not the legislative intent to regulate or control manufacturers of cereal beverages; that evidence was illegally admitted at the hearing over objection by counsel for plaintiff; and that the findings and conclusions of the Board were against the evidence, the weight of the evidence and against the law.

An answer was filed on behalf of the Permit Board. There was attached to the answer the record of the proceeding before the Board and the notes of testimony.

Plaintiff filed a supplementary petition, requesting the court "to hear additional testimony on facts which are material, but upon which no testimony

was offered in the revocation proceeding, to wit: *(a)* Your petitioner avers it was, at the time of the Act of Feb. 19, 1926, P. L. 16, and is, engaged in the business of manufacturing and selling cereal beverages of less than one-half of 1 per cent. alcoholic content in the City of Philadelphia; that its financial investment is worth approximately $300,000 in machinery, equipment and good-will; and that it has made reasonable profits by prosecuting its lawful business, and if prevented from continuing, the value of its property will be entirely lost without compensation therefor. *(b)* That its product is wholesome, innocuous, and is not deleterious to the public health, nor is the product which your petitioner manufactures, to wit, cereal beverage containing less than one-half of 1 per cent. of alcohol by volume, related to public health, safety, morals, welfare, peace or good order of the people of the Commonwealth, nor does it adversely affect the public health, morals, safety, welfare, peace or good order of the people of the Commonwealth of Pennsylvania." The allegations of this supplementary petition were not denied, and it was agreed by counsel that the petition should be considered as part of the case.

The proceeding before the Board was not an attempt to deny the right of plaintiff to conduct business as a brewery in accordance with the provisions of the law and the terms of the permit, but there was testimony at the hearing that, on Sept. 2, 1926, prohibition agents who visited the brewery conducted by plaintiff, at 7.15 in the evening, discovered evidence upon the premises of unlawful acts not warranted by the permit under which plaintiff was licensed to operate.

Plaintiff also filed a petition denying that "Exhibit B" attached to the answer of the Board, which is certified as a copy of the testimony heard by the Board, is a true and correct copy of the record, and averring that evidence omitted from the record is essential for the proper determination of the question involved.

A rule was granted to show cause why the answer should not be amended to set forth a true and correct copy of "Exhibit B," but it has not been made to appear wherein "Exhibit B" is not a full copy of the testimony, and the rule to show cause why the answer should not be amended must, therefore, be discharged.

There was testimony that when the prohibition agents visited the brewery on the evening of Sept. 2, 1926, they found beer of more than 4 per cent. of alcohol by volume manufactured and stored on the premises in two storage tanks for placing into containers, and that the beer manufactured by and in possession of plaintiff in its racking machine on the premises contained 4.59 per cent. of alcohol by volume, and that there was placed in its racking machine three one-half barrels filled with beer containing 4.58 per cent. of alcohol by volume, and that there was placed on the floor of the racking room 190 one-half barrels, including three one-half barrels in the racking machine and sixty-nine whole barrels, of more than 4 per cent. of alcohol by volume; that there were placed on five trucks on the premises for transportation barrels and half-barrels containing beer of more than 4 per cent. of alcohol by volume; that four barrels were loaded on a truck placed alongside a loading platform opposite a "hole in the wall" of the building, and that the barrels contained beer of more than 4 per cent. of alcohol by volume; that there was alongside of the platform a loading skid connecting the truck and platform, on which there were two full barrels of beer containing more than 4 per cent. of alcohol by volume; that there were in readiness for transportation on the floor of the racking room 187 one-half barrels and sixty-nine whole barrels of beer con-

taining more than 4 per cent. of alcohol by volume; that plaintiff failed to comply with the law requiring it to secure and permanently attach labels to any of the containers on the premises containing beer; that a test made on the premises of twenty-four samples of beer taken from two storage tanks, barrels on the racking room floor and from barrels loaded for transportation, all showed more than 4 per cent. of alcohol by volume, with the exception of one, which showed 3 per cent., and that the analysis of a sample taken from a truck on the premises showed an alcoholic test of 4.68 per cent. of alcohol, ana another sample taken from a barrel on a truck showed an alcoholic test of 4.76 per cent. of alcohol, and that a sample taken from one of the 190 one-half barrels on the racking room floor showed an alcoholic test of 4.42 per cent. of alcohol.

On behalf of plaintiff, two of the officers of the Premier Cereal & Beverage Company, called as witnesses, stated that they had no knowledge of the conditions described by witnesses produced by the Permit Board.

There was testimony that a watchman employed at the brewery disappeared when the prohibition officers entered the premises, and that he was subsequently found, arrested and held to bail upon a charge of conspiracy.

His affidavit was admitted in evidence. He swore that several hours before the prohibition officers arrived, a gang of "high-jackers" entered the brewery and drew off beer from the tanks into barrels for the purpose of stealing it. This evidence was admitted over an objection by counsel for the Board.

In the report filed by the Board the averments of this affidavit were ignored. Whether the members of the Board were not convinced of the truth of the statements it contained, or it was discarded as not being legal evidence, does not appear.

The Board was not bound by the technical rules of evidence in conducting its hearings, and while mere technical irregularities in the admission or exclusion of testimony by the Board will be disregarded, "all findings of fact shall be based only upon competent evidence."

The first objection filed by plaintiff to the report of the Board attacks the constitutionality of the Act of Feb. 19, 1926, P. L. 16, as offending against the Constitution of the State of Pennsylvania, article III, section 3, which provides that "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

The title to the Act of Feb. 19, 1926, is "A supplement to the Act approved the twenty-seventh day of March, one thousand nine hundred and twenty-three (Pamphlet Laws thirty-four), entitled 'An act concerning alcoholic liquors, prohibiting the manufacture, advertising, furnishing, traffic in and possession of intoxicating liquors for beverage purposes, and articles and substances designed or intended for use in the manufacture thereof, defining intoxicating liquor, providing for penalties, forfeitures and the abatement of nuisances, and repealing existing alcoholic liquor license laws;' providing for the registering of Federal permits; also regulating, under permit, through a Pennsylvania Alcohol Permit Board, created in the Department of Welfare, the manufacture, production, distillation, development, use in manufacture, denaturization, redistillation, recovery, reuse, holding in bond, holding in storage by bailees for hire, sale at wholesale and transportation for hire, of any alcohol or alcoholic liquid by certain persons; also providing for fees and the disposition thereof; also authorizing the inspection of the records of permittees and purchasers of sale alcohol or alcoholic liquid; also declaring certain places nuisances, and providing for their abatement; also providing

558        DISTRICT AND COUNTY REPORTS.        [9 D. & C.]

Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board et al.

penalties; and also repealing all acts or parts of acts inconsistent with this act."

This title is sufficiently comprehensive to indicate that it is a supplement to the Act of 1923, and that "it relates specifically to alcoholic liquor," and "all persons interested are put on notice that the general subject of the act is alcoholic liquors;" and in view of the Federal and State prohibitory legislation existing at the time the act was adopted, the title is "sufficient to put an inquirer on notice of the various enactments of the statute. Every one is presumed to know that traffic in alcoholic liquors is prohibited except under highly restricted conditions, and a law, the title of which relates to alcoholic liquors and prohibits the manufacture, furnishing, traffic in and possession of liquors for beverage purposes, must be held to put one on inquiry as to its particular provisions:" Com. v. Blackman, 82 Pa. Superior Ct..362, 364.

"Although this is a penal statute, the attitude of the courts must not be one of hostility where its constitutionality is attacked. Every presumption is in its favor and objections to its constitutionality must clearly appear:" Com. v. One Ford Truck, 85 Pa. Superior Ct. 188, 192.

"There is not a single section or clause of any section in the act that is not clearly germane to the subject expressed:" Com. v. Sellers, 130 Pa. 32.

"No part of the Federal Constitution or any of the amendments thereto takes from the states the right to determine what shall be prohibited or prejudicial to the public good, and the fact that under the peculiar circumstances of any given case the particular article condemned happens to be 'wholesome' cannot affect the application of a legitimate police statute comprehending a whole class of objects, of which the kind in question is one, the class being such as reasonably justifies regulation for the preservation of the public health. The details of such regulation are for the legislature to determine, not subject to judicial rejection, unless so palpably unreasonable as to suggest that their real object is not to protect the community or to promote the general well-being, but, under the guise of police regulation, to deprive the owner of his property without due process of law:" Nolan v. Jones, 263 Pa. 124.

"Nothing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void. The police power of the Commonwealth extends to all regulations affecting the health, good order, morals, peace and safety of society, and under it all sorts of restrictions and burdens may be imposed, and when they are not in conflict with any constitutional principles, they cannot be successfully assailed in a judicial tribunal:" Buffalo Branch, Mutual Film Corporation, v. Breitinger, 250 Pa. 225.

The second objection is that the Act of Feb. 19, 1926, does not embrace within its provisions authority for the proceedings conducted in this case, "in that it was not the legislative intent in the passage of this act to regulate or control manufacturers of cereal beverages."

Section 2 (m) of the Act of Feb. 19, 1926, P. L. 17, provides that "the phrase 'dealcoholizing plant' shall mean and include all premises and plants where alcohol or alcoholic liquids or beverages are produced by process by which beer, ale, porter or wine is produced on the premises, and plants wherein liquids, such as beer, ale, porter or wine, are produced by a wasting of alcohol or by arrested fermentation, and all premises and plants where alcohol, alcoholic liquids or beverages are treated so that the percentage of alcohol is diminished."

Section 6 of the Act of 1926 (P. L. 19) created the Pennsylvania Alcohol Permit Board, and section 3 (P. L. 18) made it unlawful for any person without a permit from the Commonwealth, obtained through a petition to the Alcohol Permit Board, except in the case of persons exempted by section 5 of the act (in which class plaintiff was not included), "to manufacture, produce, distill, develop, or use in the process of manufacture, denature, redistill, recover, reuse, . . . any alcohol or alcoholic liquid."

Section 9 requires all persons, except those exempted by section 5, manufacturing, producing, distilling, developing or using in the process of manufacture, denaturing, redistilling, recovering or reusing alcohol or alcoholic liquid, to securely and permanently attach to their container, ready for shipment thereof, a label stating the name of manufacture, kind and quantity of alcohol or alcoholic liquid contained therein, and its date of manufacture, together with the number of permit authorizing the manufacture thereof, and all persons possessing said alcohol or alcoholic liquid in quantities shall securely keep and maintain said label thereon.

Section 17 authorizes the Board to make and promulgate appropriate rules and regulations for carrying into effect the provisions of the act.

Article 3, section 4, of the rules established by the Board declares that the phrase "dealcoholizing plant shall mean and include all premises and plants where alcohol or alcoholic liquids or beverages are produced by the processes by which beer, ale, porter or wine is produced by wasting of alcohol or by arrested fermentation, and all premises and plants where alcohol, alcoholic liquids or beer are treated so that the percentage of alcohol is diminished."

Cereal beverages are declared to mean and include all malt, fermented and brewed liquids or any admixture or from whatever source or whatever processes produced, which contain or develop during or after manufacture any alcohol by volume: Article 3, section 4.

Article 6, section 2 *(g)*, defines a brewer or manufacturer of cereal beverages as one licensed to "manufacture, produce, distill, develop, use in the process of manufacture, redistill, recover, reuse, store, sell at wholesale and remove alcohol or alcoholic liquids produced in the process of operating a brewery or cereal beverage plant."

Article 9, section 2, requires that all plants manufacturing cereal beverages, vats containing liquid containing alcohol of one-half of 1 per cent. or more by volume and those having alcoholic content of less than one-half of 1 per cent. of alcohol by volume, shall be respectively labeled or otherwise marked in clear legible letters according to said alcoholic contents.

Article 11, section 11, requires manufacturers of cereal beverages to obtain a permit if the beverage they manufacture contains more than one-half of 1 per cent.

The Act of Feb. 19, 1926, is a supplement to and re-enacts the Act of March 27, 1923, P. L. 34, entitled "An act concerning alcoholic liquids," and prohibits the manufacture and possession of intoxicating liquors for beverage purposes and articles and substances designed or intended for use in the manufacture thereof, and defines intoxicating liquors. That act was held constitutional in the case of Com. *v.* Cooper, 277 Pa. 554.

Section 2 *(c)* of the Act of Feb. 19, 1926, P. L. 16, enacts that the phrase "alcohol and alcoholic liquid," whenever used, shall mean and include alcohol and all distilled, redistilled, denatured, recovered liquids or substances and any compound or admixture thereof from whatsoever source or by whatever process and which contain any alcohol by volume capable of being used for

Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board et al.

beverage purposes or as intoxicating liquor during or after manufacture, production, distillation, redistillation, denaturization or recovery.

In McElhone v. Philadelphia Quartette Club, 53 Pa. Superior Ct. 262, it was said: "In the construction of a statute, words, if of common use, are to be taken in their natural, plain, obvious and ordinary significance. But it must be conceded that it is clearly within the power of the legislature to declare in the statute the sense in which it used certain words therein contained, and that the legislature has an inherent right to prescribe the legality of its own definition or language. A construction put upon an act of the legislature, by itself, by means of a provision embodied in the same, that it shall or shall not be construed in a certain designated manner, is binding upon the courts, although the latter, without such a direction, would have understood the language to mean something different: Com. v. Curry, 4 Pa. Superior Ct. 256; Getz v. Brubaker, 25 Pa. Superior Ct. 303; 27 Cyc., 112.

"When the language of a statute is clear and unequivocal, without ambiguity or uncertainty, we are to presume that it expresses the intent of the legislature, and no construction is necessary: Haddock v. Com., 103 Pa. 243, 249."

In the third objection plaintiff alleges that at the hearing by the Board evidence was illegally admitted over the objection of petitioner.

Article 14, section 1 (d), of the General Rules and Regulations of the Alcohol Permit Board provides that the Board will not be bound by the technical rules of evidence in conducting any hearings.

Reference was made, during the taking of testimony, to certain photographs, but they were not offered in evidence and formed no part of the record. They were used "for the purpose of aiding the Board to understand the testimony of the witnesses," and counsel for plaintiff stated he had no objection to them being used for that purpose.

Objection was made to the admission in evidence of the permit granted by the Board to plaintiff, and also to the application for the permit. Plaintiff claimed that it was not within the purview of the law that plaintiff should require a permit to authorize it to conduct a brewery. If this position is correct, there should be no objection on the part of plaintiff to the revocation of a permit unlawfully granted, and the order forfeiting the bond might also be claimed to be void.

Objection was made on behalf of plaintiff to the admission of evidence of the samples of beer taken by the agents, but counsel for plaintiff stated: "I just want to ask two or three questions about the method of taking the samples, and if my questions are satisfactorily answered, I will withdraw my objection." He was permitted to cross-examine the witness at length, and the questions propounded by him were answered by the witness. Counsel for plaintiff also objected to testimony of alcoholic content determined by an "ebullimeter" that showed an excess of 4 per cent. in samples obtained, but there was no evidence to attack the accuracy of the results showing alcoholic content.

There was an objection to the admission of a letter dated Sept. 3, 1926, transmitting samples of the beer to the chemist for examination, unless counsel for plaintiff had an "opportunity to ask some questions." He was allowed the opportunity to cross-examine the witnesses at length.

The affidavit of the watchman offered on behalf of the plaintiff was admitted over the objection of counsel for the Board. The objection might with propriety have been sustained; but "section 13 of the Act of Feb. 19, 1926, P. L. 16, 24, provides that "Mere technical irregularities in the procedure of the Board shall be disregarded."

The remaining objections that the findings and conclusions of the Board were against the evidence, against the weight of the evidence and were contrary to law, are without merit.

In Nolan v. Jones, 263 Pa. 126-127, it was said: "In order to serve the public welfare, the State, under its police power, may lawfully impose such restrictions upon private rights as in the wisdom of the legislature may be deemed expedient (Enders v. Enders et al., Exec'rs, 164 Pa. 266, 271), for 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community:' Mugler v. Kansas, 123 U. S. 623, 655. A statute enacted for the protection of the public health, safety or morals can be set aside by the courts only when it plainly has no real or substantial relation to those subjects, or is a palpable invasion of rights secured by the fundamental law. If 'it does not appear upon the face of the statute, or from any facts of which the court may take judicial cognizance, that it infringes rights secured by the fundamental law, the legislative determination is conclusive:' Powell v. Pennsylvania, 125 U. S. 678, 685."

Com. v. Dietz et al., 285 Pa. 511, 518, 520, declared: "It is primarily for the legislature to consider and decide the fact of what constitutes a menace to public health, then to meet it by a proper remedy, and 'a statute enacted for the protection of public health . . . can be set aside by the courts only when it plainly has no real or substantial relation to the subject or is a palpable invasion of rights secured by the fundamental law:' Nolan v. Jones, 263 Pa. 124, and authorities there cited. So long as we have the illicit stream of deleterious, if not poisonous, liquors which, in spite of earnest efforts at prohibition enforcement, flow through our State, who can say that an enforcement act is not properly classed as a health measure, particularly where, in the very nature of the situation, there can be no government inspection of such liquors for the protection of the public. . . . New conditions of life, brought about by alterations in our Federal Constitution, have caused developments in the law of Pennsylvania and move the legislature to declare a certain state of facts to constitute a nuisance detrimental to public health, and to provide that it shall be abatable by injunction; but this represents no more than the proper exercise of a legislative prerogative and the legitimate use of a customary equitable remedy to meet and cope practically with the situation in hand for the proper protection of what our law-makers conceive to be the common welfare. In Kariher's Petition (No. 1), 284 Pa. 455, 470, 471, we recently said: 'The history of [remedial] procedure is a story of many changes, and neither the Constitution of Pennsylvania nor of the United States acts as a barrier to further changes of this nature, so long as the fundamental elements of due process are retained.' Neither due process of law, in general, nor the right to trial by jury, in particular, are interfered with by the legislation now before us, and the case really presents none of the nice questions as to legal limitations on the development of equity jurisdiction so ably argued by learned counsel, because, looking on the Act of 1923 as an assertion of public policy in the nature of a health measure, as we must, all of those questions are beside the point, and the many authorities called to our attention in connection therewith require no discussion."

In Buffalo Branch, Mutual Film Corporation, v. Breitinger, 250 Pa. 225, it was said: "Nothing but a clear violation of the Constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void. The constitutionality of an act of assembly cannot be tried by the motives and designs of the law-makers, however plainly expressed; if the act itself is within the

scope of their authority, it must stand: Powell *v.* Com., 114 Pa. 265." It was said in Com. *v.* Keary, 198 Pa. 500-501: "It must not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked. . . . Courts are not to be astute in finding or sustaining objections." In Lieberman *v.* Van De Carr, 199 U. S. 552, it was said: "These cases leave in no doubt the proposition that the conferring of discretionary powers upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the State is not violative of rights secured by the 14th Amendment."

There is nothing in the amended petition of plaintiff that affects the power of the Pennsylvania Alcohol Permit Board to declare the conduct of the plaintiff unlawful and to revoke the permit. The appeal provided by the act is from the discretion of the Board. "When it is found necessary to take private property under the police power, no compensation need be given the owner, unless expressly provided by statute. It is the application of the personal right or principle of self-preservation of the body politic:" Bouvier's Law Dictionary, title Police Power, page 692; Buffalo Branch, Mutual Film Corporation, *v.* Breitinger, 250 Pa. 225, 231, *supra*.

Section 13 of the Act of 1926 provides that upon hearing, if satisfied that any violation has occurred, the Board shall immediately revoke the permit.

Counsel for plaintiff has demanded that the questions of fact that were presented before the Board be submitted by this court to a jury.

There is no provision in the acts of the legislature or in the rules of the Board providing for a jury trial.

Van Swartow *v.* Com., 24 Pa. 131, was an appeal from a conviction under the Act of April 14, 1851, prohibiting the sale of liquor on Sunday. It was claimed that the act was unconstitutional by reason of not providing for a trial by jury. It was said by Black, C. J., that the summary conviction of the defendant raised the question of constitutionality: "Because the law does not give him a trial by jury, it is said to be in conflict with the Constitution of the United States, which declares that 'in suits at common law, when the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved.' This is sufficiently answered by saying that the case before us is not a suit at common law, but a criminal proceeding under a special statute. It is also argued that the Constitution of Pennsylvania is violated in that part of it which provides that 'trial by jury shall be as heretofore, and the right thereof remain inviolate.' But the trial by jury is as it was at the formation of the Constitution, and the right as it then existed does remain inviolate. Every class of cases triable by jury in 1790 are still triable in no other way; at least this statute has not diminished their number. There is nothing to forbid the legislature from creating a new offence and prescribing what mode they please of ascertaining the guilt of those who are charged with it. Many tribunals, unknown to the framers of the Constitution, and not at all resembling a jury, have been erected and charged with the determination of grave and weighty matters; for instance, commissioners, viewers and appraisers of damages, county and township auditors and those officers of the State government whose duty it is to settle the public accounts. All of these functionaries have, at different times in our history, been empowered to decide the most important controversies without appeal. In some of them, the right of an ultimate trial by jury has been given; but this was not done because the laws were believed to be unconstitutional without it. The purpose of the Constitution undoubtedly was to preserve the jury trial wherever the common law gave it, and in all other cases to let the legislature and the people do as

their wisdom and experience might dictate. Summary convictions were well known before the formation of the Constitution, and they are not expressly or impliedly prohibited by that instrument except in so far as they are not to be substituted for a jury where the latter mode of trial had been previously established."

In Byers and Davis *v.* Com., 42 Pa. 89, the question was raised as to the constitutionality of the Act of March 13, 1862, authorizing the arrest of professional thieves and their commitment by a magistrate without a jury trial. In the opinion of the Supreme Court, delivered by Strong, J., it was said: "It is insisted that this act is repugnant to that clause in the declaration of rights in the Constitution which guarantees 'that trial by jury shall be as heretofore, and the right thereof remain inviolate.' The objection is based upon a misconception of what that right of trial by jury was which is protected by the Constitution. The founders of this State brought with them to their new abode the usages to which they had been accustomed in the land from which they emigrated. Among them was trial by jury. That mode of trial had long been considered the right of every Englishman, and it had come to be regarded as a right too sacred to be surrendered or taken away. Even in England it was fundamental or constitutional, so far as any right can be where there is no written frame of government. Its extent and its privileges, how and when it was to be enjoyed, were perfectly understood, and in bringing it with them the founders of the Commonwealth doubtless intended to bring it as they had enjoyed it. None of the frames of government or constitutions under which we have lived have contemplated any extension of the right beyond the limits within which it had been enjoyed previous to the settlement of the State or the adoption of the Constitution. No intention to enlarge it appears in the laws agreed upon in England in 1682. Our first Constitution, that of 1776, declared that 'trials by jury shall be as heretofore.' The Constitution of 1790, and the amended one of 1838, adopted substantially the same provision. Their language was: 'Trial by jury shall be as heretofore, and the right thereof remain inviolate.' All looked to preservation, not extension. It is the old right, whatever it was, the one previously enjoyed, that must remain inviolable, alike in its mode of enjoyment and in its extent. What, then, was this right thus cherished and thus perpetuated? We inquire not now after the mode in which such a trial was conducted. Our business at present is to ascertain how far the right to a trial by jury extended—to what controversies it was applicable. It was a right, the title to which is founded upon usage, and its measure is, therefore, to be sought in the usages which prevailed at the time when it was asserted. But never in England was there any usage, and, consequently, never was there any right in the subject, that every litigated question of fact should be submitted to a jury. In all that large class of cases which are cognizable in courts of equity, there never was any right of trial by jury; nor did the right extend to many other civil and criminal proceedings. Summary convictions for petty offences against statutes were always sustained, and they were never supposed to be in conflict with the common law right to a trial by jury."

"The legislature may withhold trial by jury from new offences and new jurisdictions created by statute and clothed with no common-law power; and also from proceedings in common-law courts out of the course of the common law, because 'heretofore' trial by jury did not exist in such cases:" Rhines *v.* Clark, 51 Pa. 96.

If the affidavit of the watchman that was offered in evidence by plaintiff is excluded, there is no conflict in the testimony; and there is no evidence of abuse of discretion by the Board.

Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board et al.

And now, to wit, Sept. 15, 1927, the exceptions to the order of the Pennsylvania Alcohol Permit Board revoking the license of the plaintiff, the Premier Cereal & Beverage Company, are dismissed; the revocation of the permit is sustained, and plaintiff is ordered to pay the costs.