741 A.2d 1272

Sherry **WERTZ**, Appellant,

v.

**CHAPMAN TOWNSHIP; Chapman Township Supervisors;
Robert Walizer; Dean Scott; and Robert Young,
Appellees.**

Supreme Court of Pennsylvania.

Argued April 26, 1999.

Decided Dec. 21, 1999.

Jeffrey C. Dohrmann, Williamsport, for Sherry Wertz.

Anthony R. Sherr, Blue Bell, for Chapman, et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

■ We granted allocatur to address an issue to which this court has not spoken. Specifically, we shall consider whether a plaintiff seeking monetary damages under the Pennsylvania Human Relations Act ("PHRA") [1] is entitled to a trial by jury. For the reasons stated more fully below, we find that a plaintiff is not entitled to a jury trial for claims arising under the PHRA. Thus, we affirm the order of the Commonwealth Court.

The facts of this matter are as follows. In December of 1989, Sherry Wertz (Appellant) was hired as a road crew laborer for Chapman Township (together with the Chapman Township Supervisors, Robert Walizer, Dean Scott, and Robert Young, Appellees) to replace her mother, Patricia Stevenson, who was on medical leave. On April 9, 1990, Appellant informed her road crew foreman, Fred Gummo, that she was no longer able to lift objects weighing more than 25 pounds because she was pregnant. According to Appellant, her foreman ignored this request and began to harass her continuously. Specifically, Gummo ordered Appellant to lift heavy items, made sexually degrading remarks to her, threatened to terminate her employment, isolated her from the rest of the work crew, denied her breaks, and made unwarranted complaints about her work.

Appellant complained to the Chapman Township Supervisors about her foreman's conduct. The Supervisors agreed that Gummo's conduct was inappropriate and ordered the foreman to correct his behavior. Appellant alleges that subsequent to this admonition, the harassment by her foreman increased. On May 11, 1990, Appellant was terminated from her position.

On June 5, 1992, Appellant filed an action in federal court alleging violations of federal and state employment discrimination law. On June 30, 1994, Appellant's federal claims were dismissed as time-barred. As a result of the dismissal of her

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–962.2.

federal claims, Appellant's state claims were transferred to the Court of Common Pleas of Clinton County. The trial court found that Appellant's claims under the PHRA were not time-barred due to tolling. Thus, Appellant was able to press forward with her action against Appellees.[2]

On March 13, 1995, Appellant filed a motion for trial by jury. The trial court denied the motion on April 12, 1995. On September 25, 1996, after a one-day trial, the trial judge found in favor of Appellees. On October 29, 1996, the trial court denied Appellant's post-trial motions and entered a judgment in favor of Appellees.

The Commonwealth Court vacated the trial court's judgment and ordered a new trial based upon its finding that the trial court erred in excluding the testimony of a witness concerning the foreman's alleged past discriminatory remarks concerning women. In a two to one decision, the court also affirmed the trial court's denial of a jury trial on Appellant's claims under the PHRA. Appellant filed a petition for allowance of appeal.

We granted allocatur to determine whether Appellant is entitled to a trial by jury.

■ Appellant argues that under both the PHRA and the Pennsylvania Constitution, she is entitled to a jury trial. It is axiomatic that if an issue can be resolved on a non-constitutional basis, that is the more jurisprudentially sound path to follow. Thus, we shall first consider whether Appellant is entitled to a jury trial under the PHRA. As with all issues of statutory construction, this court's analysis begins with the words of the statute. *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 748 (1998). The PHRA provides in relevant part, that:

2. In her complaint, Appellant named as defendants the Chapman Township Supervisors, Robert Walizer, Dean Scott, and Robert Young both as individuals and in their capacities as supervisors. Based upon agreement of the parties, the claims against Walizer, Scott, and Young in their individual capacities were dismissed by order of the trial court. However, they continued as defendants in their official capacities as supervisors.

If the court finds the respondent has engaged in such discriminatory practices charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal or equitable relief as the court deems appropriate. . . .

43 P.S. § 962(c)(3).

Recently in *Hoy*, this court reviewed the same provision of the PHRA in determining whether a plaintiff is entitled to punitive damages under the PHRA. In finding that a plaintiff is not entitled to punitive damages under the PHRA, our court considered the absence of language expressly providing for the right, the ability of the General Assembly to provide for such a right, other statutory language, as well as other indicia of the legislature's intent. We shall conduct a similar analysis in this appeal.

First, the statute itself is silent as to the right to trial by jury. As in *Hoy*, we again note that the legislature is cognizant of its ability to expressly provide for certain legal rights. The General Assembly is well aware of its ability to grant a jury trial in its legislative pronouncements, as it has done so in other contexts. 50 P.S. § 944 (guardianship of weak-minded persons); 23 Pa.C.S.A. § 4343 (child paternity dispute). Thus, with this knowledge firmly in hand, we can presume that the General Assembly's express granting of trial by jury in some enactments means that it did not intend to permit for a jury trial under the PHRA.

Additionally, the General Assembly's use of the term "court" in the statute is significant. The statute states that "If the *court* finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the *court* shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting back pay, or any other legal or equitable relief as the *court* deems appropriate." 43

P.S. § 962(c)(emphasis supplied). This is strong evidence that under the PHRA, it is a tribunal, rather than a jury, that is to make findings and provide relief. *See* 1 Pa.C.S.A. § 1921 ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Finally, the legislative history of the PHRA fails to provide the court with any indication that the General Assembly intended for a plaintiff to have a right to trial by jury. *Murphy v. Cartex*, 377 Pa.Super. 181, 546 A.2d 1217, 1223 (1988)("There is nothing in the specific language of § 962(c) nor in the legislative history to indicate any intent on the part of the legislature to provide for a materially different proceeding when the PHRA claims are decided, not by the Commission, but by a court of common pleas. The involvement of a jury would constitute a material difference."). Thus, neither the terms of the statute nor the legislative history supports Appellant's position that she is entitled to a jury trial.

Appellant argues that because the language of the PHRA provides for "legal" relief, and because such relief rests traditionally in courts of law, as opposed to courts of equity, she is entitled to a jury trial, since plaintiffs in cases involving monetary damages, i.e., legal relief, are entitled to a trial by jury. Thus, according to Appellant, the PHRA implicitly entitles Appellant to a jury trial.

Simply because the PHRA allows for legal relief does not necessarily translate into a legislative intent to provide for a jury trial. While the provision of legal relief may in some instances suggest a trial by jury, it is not dispositive. As noted by the Commonwealth Court in its opinion below, an award of legal relief " 'incidental to or intertwined with injunctive relief' may be equitable." *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 571, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) *quoting Tull v. United States*, 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); *accord Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Indeed, that a court of equity had the power to provide for damages incident to its equitable decree

has deep roots in our Commonwealth's jurisprudence. *Allison and Evans' Appeal,* 77 Pa. 221 (1874); *see also Walters v. McElroy,* 151 Pa. 549, 25 A. 125 (1892); *State Hospital for Criminal Insane v. Consolidated Water Supply,* 267 Pa. 29, 110 A. 281 (1920); *Gray v. Philadelphia & Reading Coal & Iron Co.* 286 Pa. 11, 132 A. 820 (1926). Accordingly, we reject Appellant's assertion that the provision of "legal" relief necessarily means that the General Assembly intended that a plaintiff be entitled to a jury trial under the PHRA. *Accord Hoy,* 720 A.2d at 748–49 (provision for "legal" relief does not lead to finding of availability of punitive damages).

Based upon the legislature's silence on the issue of the availability of a jury trial, together with the affirmative use of the term "court," and the lack of any legislative history to the contrary, we conclude that the General Assembly did not intend for a plaintiff to have a right to trial by jury for claims under the PHRA. Of course, we recognize the difficulty in ascertaining the General Assembly's intent where the statute provides no express answer. However, we are secure in the knowledge that if we are mistaken as to the legislature's intent, the General Assembly may simply amend the PHRA to realize any heretofore unstated legal right that it contemplated.

However, our determination that the PHRA does not provide for a trial by jury does not end our inquiry. We must also consider Appellant's argument that she is entitled to a jury trial under the Pennsylvania Constitution.[3]

Article 1, Section 6 of the Pennsylvania Constitution states: Trial by jury shall be as heretofore and the right thereof remain inviolate.

Pa. Const. art. 1, § 6.

The article and section preserving the right of a trial by jury has appeared in each version of Pennsylvania's Constitu-

---

**3.** Appellant does not make an argument under the Seventh Amendment to the United States Constitution, nor could she if so desired, as the Seventh Amendment is applicable only to federal court proceedings. *Minneapolis & St.L.R. Co. v. Bombolis,* 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916)(states are not constitutionally obligated to provide for a jury trial in civil cases).

tions. In construing this provision, this court's case law makes clear that our Constitution preserves the right to a trial by jury only in those cases where it existed for the particular cause of action at the time our Constitution was adopted.

In *Byers and Davis v. Commonwealth,* 42 Pa. 89 (1862), the defendants challenged a statute criminalizing the conduct of professional thieves as being violative of the right to jury trial under the constitution. Our court noted that the constitutional provision regarding trial by jury

> looked to preservation, not extension. It is the old right, whatever it was, the one previously enjoyed, that must remain inviolable, alike in its mode of enjoyment and extent. What, then, was this right thus cherished and perpetuated? We inquire not now after the mode in which such a trial was conducted. Our business at present is to ascertain how far the right to a trial by jury extended—to what controversies it was applicable. It was a right the title to which is founded upon usage, and its measure is therefore to be sought in the usages which prevailed at the time when it was asserted.

*Byers,* 42 Pa. at 94. The court concluded that statutes prior to the time of our Constitution regarding individuals at public places for unlawful purposes were liable for summary conviction without a jury trial. Thus, the statutory provision before the court was not unconstitutional.

Particularly relevant to the case at hand, almost one hundred years later in *Appeal of Watson,* 377 Pa. 495, 105 A.2d 576 (1954), this court addressed the appellant's argument that she was entitled to a jury trial on her suspension from teaching for mental derangement. The appellant in *Watson* argued that the right to a trial by jury on the issue of her mental derangement existed in Pennsylvania prior to the adoption of the Constitution of 1874. The court found that the fallacy in the argument was that "no statute, enacted prior to the Constitution of 1874, entitled a teacher, when discharged for mental derangement, to a trial of the issue by a jury." *Watson,* 105 A.2d at 577–78.

Shortly thereafter, in *William Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A.2d 59, 64 (1961), this court, in considering the constitutionality of the Motions Picture Controls Act of 1959, noted that "the individual is entitled to a public trial by an impartial jury of the vicinage in every situation in which he would have been entitled to such a trial at the time of the adoption of our State Constitution of 1790 and ever since under our succeeding constitutions." The court concluded that the utterance of obscene matter was a crime at common law for which a defendant was entitled to a jury trial. *Id.*

From this case law emerges the legal tenet that jury trials are constitutionally required only in those cases where a jury trial for the claim would have been available when the Pennsylvania Constitution was adopted. *See* Robert E. Woodside, .Pennsylvania Constitutional Law, 143 (1985); Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 67 (1907).

Perhaps the most detailed statement of the analysis to be used when determining whether a jury trial is constitutionally mandated is found in *Commonwealth v. One (1) 1984 Z-28 Camaro Coupe,* 530 Pa. 523, 610 A.2d 36 (1992). In this case, then Justice Flaherty, now Chief Justice Flaherty, writing for the majority, held that an individual was entitled to a jury trial on the issue of the forfeiture of his 1984 Camaro pursuant to the Controlled Substances Forfeiture Act. 42 Pa.C.S.A. § 6802. In making this determination, the court offered a three-prong analysis to determine the defendant's right to a jury trial.

First, the court looked to see if there was a statutory requirement for a jury trial in the case. Second, the court inquired into whether jury trials were required in forfeiture proceedings in 1790. Finally, if jury trials were required, the court asked whether there was a common law basis for the proceeding. *Camaro Coupe,* 610 A.2d at 39.

Applying this analysis, the court first determined that there was no statutory basis for a right to jury trial. As to the

second issue, the court's research disclosed that an in rem forfeiture proceeding existed at common law and that the owner of property in such a proceeding was afforded a trial by jury. Finally, the court looked to whether the forfeiture action had a common law basis. The court noted that the term "common law basis" did not, in the context of the case, mean that the action originated at common law, for even prior to 1790, forfeiture actions were statutory in nature. Thus, a jury trial was not denied merely because the action was statutory. Rather the "common law basis" referred to the nature of the proceeding in common law courts, such as in the Court of Exchequer, but not in the Courts of Admiralty or Chancery.

Our court determined that in England, forfeiture actions in the common law courts, i.e., the Courts of Exchequer, were tried before a jury, and in the United States, forfeiture actions were heard before juries in cases where Courts of Exchequer would have had jurisdiction. Thus, the court concluded that the forfeiture action had a common law basis, for it was the type of case which would have been within the jurisdiction of the Court of Exchequer, and later, American common law courts. That being the case, the defendants were entitled to a jury trial pursuant to Article 1, Section 6 of our Constitution.

In light of the above, we come to the following conclusions. In the absence of a statutory basis for a trial by jury, the next inquiry for a reviewing court is whether there existed the particular cause of action at the time of the adoption of the constitution, and if so, whether there existed a concomitant right to jury trial. Only then does the court consider the third inquiry of whether there is a common law basis for the proceeding.

Applying this analysis to the case before us, we find that Appellant is not entitled to a trial by jury under our Constitution. First as to the statutory issue, as discussed above, the legislature did not provide for a trial by jury. Second, we find that jury trials were not required for discrimination actions in 1790 because a cause of action for sexual

harassment and discrimination was foreign and unknown to the common law at the time our constitution was adopted. Our research has not disclosed, and Appellant has failed to provide the court with, case law or any other indication to the contrary. Indeed, the rights of women and minorities at that time in our history were "underdeveloped" to say the least. Having determined that no cause of action for sexual discrimination existed at the time of the adoption of our constitution, we do not consider the third prong of the *Camaro Coupe* analysis.

Appellant also submits that federal decisional law leads to the conclusion that she is entitled to a trial by jury. According to Appellant, the federal district courts in Pennsylvania have predicted that our court would find that there exists a right to a jury trial under the PHRA. *See e.g., Lubin v. American Packaging Corp.,* 760 F.Supp. 450 (E.D.Pa.1991); *Galeone v. American Packaging Corp.,* 764 F.Supp. 349 (E.D.Pa.1991). However, as conceded by Appellant, these cases have largely relied upon federal jurisprudence interpreting the availability of a jury trial under the Seventh Amendment to the United States Constitution. The lower federal courts have looked to the availability of a trial by jury under federal discrimination statutes in attempting to determine the right to a trial by jury under the PHRA.

Specifically, the federal district courts have found of great import the United States Supreme Court's decision in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) where the Court found that there is a right to a trial by jury under the Age Discrimination and Employment Act, 29 U.S.C. §§ 621 et seq. (ADEA).

In *Lorillard,* the Court found a right to a jury trial under the ADEA on two grounds. First, the Court noted that the ADEA was based upon the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (FLSA). Prior to the enactment of the ADEA, it was established that a jury trial was available under the FLSA. Thus, the Court reasoned that Congress intended to incorporate the right found under the FLSA into the ADEA. The Court went on to find the right to a jury trial

under the Seventh Amendment to the United States Constitution. The Court reasoned that in cases in which legal relief is available, and legal rights are determined, the Seventh Amendment provides for a right to a trial by jury. As Congress provided for legal relief pursuant to the ADEA, the Court concluded that Congress intended there to be a right to a jury trial under that statute.

Extrapolating this analysis to the case *sub judice,* Appellant argues that like the ADEA, the PHRA provides for legal and equitable relief. Thus, Appellant suggests that our court should embrace an analysis akin to that utilized in *Lorillard* and come to a similar conclusion regarding the right to a jury trial under the Pennsylvania Constitution. We decline to accept Appellant's offer.

First, we note that federal cases regarding the right to a jury trial are based upon the Seventh Amendment to the United States Constitution. Although worded differently, the federal constitutional amendment is analogous to its Pennsylvania counterpart. Both provisions retain the right to jury trial in civil cases where it existed at common law. Despite the similarities, this court has made clear that in interpreting a provision of the Pennsylvania Constitution, we are not bound by the decisions of the United States Supreme Court which interpret similar federal constitutional provisions. *Blum v. Merrell Dow Pharmaceuticals,* 534 Pa. 97, 626 A.2d 537 (1993). More importantly, as noted above, this court has viewed the proper analysis under the Pennsylvania Constitution to consist of, *inter alia,* an inquiry into whether the a jury trial existed for the cause of action at common law at the time of the adoption of our Constitution. Conversely, federal case law examines whether the statutory cause of action is analogous to a common law claim for which there was a right to trial by jury, with focus, as demonstrated in *Lorillard,* on the relief provided. *City of Monterey v. Del Monte Dunes,* 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). Based upon the

discussion above, this inquiry is simply not our court's focus. As the above discussion makes clear, this court has eschewed a focus on the remedy sought and has embraced a view which looks to the cause of action in determining the right of a jury trial pursuant to Article I, Section 6 of our Constitution. Thus, we find the federal decisions predicting a finding of the right to a jury trial to be unpersuasive and decline Appellant's suggestion that we adopt an analysis similar to that utilized by our federal colleagues. *Accord Hoy*, 720 A.2d at 745 (federal decisions not binding upon this court as final arbiter of state law; reliance upon federal decisions predicting a finding of punitive damages misplaced).

Related to this argument, Appellant also submits that sexual discrimination should be viewed as a tort akin to personal injury or as an action for wrongful discharge which was cognizable at common law, and which has a common law basis. Again, we reiterate that this is not the proper analysis under our jurisprudence. Rather, the focus, at least for purposes of determining a constitutional right, is whether a trial by jury existed for the cause of action at the time of the adoption of our Constitution. Thus, we find Appellant's "analogy" argument to be contrary to this court's prior case law, and thus, without merit.[4] Additionally, we note that the PHRA provides for a statutory cause of action that was formerly unavailable. Thus, any attempt at analogy must be viewed with circumspection.

Finally, we note that we do not perceive the lack of a right to jury trial under the PHRA as inimical to the policy goals of the statute. We are not convinced that the PHRA is now incapable of succeeding in its admirable mission of redressing and eliminating discrimination. While we are aware of the

4. We are cognizant of the Superior Court's decision in *Raleigh v. Westinghouse Electric Corp.*, 379 Pa.Super. 606, 550 A.2d 1013 (1988), *alloc. denied* 522 Pa. 613, 563 A.2d 499 (1989) in which the court made an analogy of a claim of discrimination under the PHRA to a tort claim for personal injuries in determining the proper statute of limitation. While in that context, such an analogy may have been appropriate, for purposes of this opinion, in determining the right to a trial by jury, we find such an analysis, for the reasons stated above, to be inapt.

great value placed on a trial by a jury of one's peers in our Commonwealth, we are confident that the judges of our Commonwealth are equally as capable as jurors to justly resolve claims of discrimination brought under the PHRA. This case simply presents the court with the issue of what body, a judge or jury, the Legislature intended to hear claims of discrimination. We find that the legislature did not intend for a plaintiff to have a right to a trial by jury for claims under the PHRA.[5]

The order of the Commonwealth Court is hereby affirmed.[6]

5.  Finally, Appellant quotes the three policy concerns raised by the dissent in the Commonwealth Court. Specifically, Judge Leadbetter, while finding no constitutional right to a jury trial, noted the anomaly that will exist because of our decision. Specifically, where a claim under the PHRA is joined with a federal claim, and heard in federal court, there appears to be the possibility that a jury will hear the case if so demanded, whereas the same cause of action if heard in state court will be heard by a judge. *See Simler v. Conner*, 372 U.S. 221, 222–23, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 533–540, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) *overruled on other grounds, Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). While this may be an outcome of our holding today, we simply note that such is one of the peculiarities of our system of federalism. U.S. Const. amend. X; The Federalist Nos. 45, 46. (James Madison). Again, the General Assembly is free to amend the statute if it shares a similar concern. Additionally, Judge Leadbetter suggests that rural residents will suffer the increased burden of time and expense if they must travel to a federal court for a trial by jury. We do not believe that this is any different than the situation in which a cause of action is recognized only in federal law or is preempted. No suggestion is made that this burden rises to the level of a deprivation of due process, nor can we envision such a claim. Simply stated, while our rural residents may unfortunately have to travel an increased distance if they seek a trial by jury on their discrimination claims, we do not believe that this compels the conclusion that the legislature intended the PHRA to provide for a jury trial. Finally, Judge Leadbetter suggests that by selecting the forum in which to bring their claims, plaintiffs will have the absolute power to determine whether the case will be tried by jury or judge. We do not believe this concern to be well founded as even if a plaintiff was afforded the right to a jury trial under the PHRA, the plaintiff would still seemingly be in control of whether or not to demand a trial by jury. Thus, our holding does not bestow upon a plaintiff any greater power than she exercised before. Simply stated, these concerns, while legitimate, do not mandate a result contrary to the court's holding today.

6.  The dissent contends that there exists a right to a jury trial under both the PHRA and our Constitution. As to a statutory right to a trial by jury

Justice ZAPPALA concurs in the result.

Justice CASTILLE files a dissenting opinion.

CASTILLE, Justice, dissenting.

I respectfully dissent from the majority's conclusion that a plaintiff seeking monetary damages under the Pennsylvania Human Relations Act (PHRA or Act) is not entitled to a trial by jury. The right to a jury trial is central to our system of justice. *See* Pa. Const. Art. I, § 6;[1] 42 Pa.C.S. § 5104(a).[2] It has never been the law in this Commonwealth that an individual is entitled to a jury trial only where that right is specifically provided in legislation. Nor, in my view, should it be the law that the right to a jury trial is wholly dependent upon affirmative legislative action. The statutory provisions regarding the filing of various actions such as negligence and defamation suits, for example, are silent as to the availability of a jury trial, yet a jury trial is afforded to a plaintiff in such actions. *See* 42 Pa.C.S. §§ 5523–24. Similarly, a plaintiff in

under the PHRA, we merely note that it is not this court's role to sit as a super legislature. While the members of this court may believe that it would be in the best interest of the peoples of our Commonwealth to permit a trial by jury, the fact of the matter remains that the right to a jury trial was not made a part of the PHRA. As to a Constitutional right to a trial by jury, the dissent asserts, without citation to case law or other authority, that there should be a constitutional right to a trial by jury for charges of discrimination. Quizzically, the dissent equates the right to a jury trial with the rights of women and minorities in general. In this regard, the dissent, in a case of wanton exaggeration, accuses the majority of repressing the rights of women and minorities and attempting to keep those rights as underdeveloped as they were in the 18th century. Unlike the dissent, we reiterate that we have great faith in our trial judges to uphold the rights of women and minorities and to guarantee that their rights are fully developed in accordance with the laws of Pennsylvania. If the citizens of our Commonwealth believe that a jury trial should be available for causes of action other than those recognized in 1790, they need only to amend that great contract between our government and our citizenry, a contract this court is called on to interpret, not to rewrite.

1. Article I, § 6 provides that "[t]rial by jury shall be as heretofore, and the right thereof remain inviolate."

2. 42 Pa.C.S. § 5104(a) provides: "Except where the right to trial by jury is enlarged by statute, trial by jury shall be as heretofore, and the right thereof shall remain inviolate."

an employment discrimination action under the PHRA should be entitled to a jury trial.[3]

The majority relies on our recent decision in *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998), in which we found that a plaintiff in an action under the PHRA could not recover punitive damages. As the majority correctly states, that holding was based upon the fact that the PHRA does not specifically provide for punitive damages, nor does the legislative history indicate that the legislature intended that punitive damages be recoverable under the PHRA. The majority, however, overlooks the fact that our decision in *Hoy* was also grounded upon the underlying purpose of the PHRA, which is remedial rather than punitive in nature. While the availability of punitive damages would not be consistent with the remedial nature of the PHRA, the same is not true of the availability of a jury trial. Thus, this case is as distinguishable from *Hoy* as the issue of the availability of punitive damages is from the right to a jury trial. There exists no fundamental right to recover punitive damages; therefore, our decision in *Hoy* does not violate any fundamental rights. To extend the holding in *Hoy* to the instant case carries this Court's reasoning in *Hoy* to an unwarranted extreme where a fundamental constitutional right—the right to a jury trial—is infringed. I believe that such a result is contrary to the letter of the law in Pennsylvania.

The majority embraces a strict construction of the Pennsylvania Constitution when it also concludes that there is no constitutional right to a jury trial in employment discrimination actions because no such right existed prior to the enactment of our Constitution in 1790. In its analysis of this issue, the majority concedes that "the rights of women and minorities at that time in our history were 'underdeveloped' to say the least." Op. at 1277. That being said, the majority then goes on to ensure that those rights will remain quite "underdeveloped" by applying a rule of law that would require that

**3.** In the federal court system, 42 U.S.C. § 2000e provides that a plaintiff in an employment discrimination action entitled to a trial by jury.

the rights of women and minorities in the 20th century be congruent with what those rights were in the 18th century in order for a jury trial to be available in this instance. The majority is, in essence, saying that women and minorities are, at least to the extent of their right to a jury trial, stuck with the state of their rights in 1790 unless legislature affirmatively expands those rights. Certainly the framers of our Constitution intended that it be interpreted to meet the needs of society as it grew and changed. An interpretation of the Constitution that is too rigid to encompass societal changes makes a mockery of the spirit of that document and the rights it grants to the citizens of this Commonwealth. Thus, I would hold that the Pennsylvania Constitution guarantees appellant the right to a trial by jury in this employment discrimination action.

Accordingly, I would reverse the order of the Commonwealth Court.