**Academy Industries Inc. v. PNC Bank N.A.**

*Gilbert B. Abramson,* for plaintiffs.
*William A. Slaughter* and *Joel E. Tasca,* for defendants.

SHEPPARD JR., *J.,* January 30, 2001—Petitioners, PNC Bank N.A., Herbert McDonald and The Fulcrum Group, filed this motion to strike the demand for a jury

trial made by respondents, Academy Industries Inc., Stuart Polsky and Richard Kaufman.

For the reasons set forth, this court will enter a contemporaneous order granting the motion to strike the jury trial demand.

## BACKGROUND

These consolidated actions arise out of loans extended by PNC to Academy pursuant to a loan and security agreement dated December 9, 1996. In connection with the loan agreement, Academy also entered into a "revolving loan note," a "term note" and a "mortgage note." In addition, Academy guaranteed the loans under a guaranty and suretyship agreement, while three of Academy's principals, including Polsky and Kaufman, guaranteed up to $500,000 of the loans under a limited guaranty and suretyship agreement.[1] Each of the loan documents includes language waiving the right to a jury trial in actions related to the loan documents.[2]

When several disputes as to alleged defaults occurred, PNC entered into two forbearance agreements with Academy, the second of which ran until April 30, 1999.[3] Each of these forbearance agreements also included a waiver of the right to a jury trial. PNC asserts that in September 1999, Academy remained in default and filed for bank-

---

1. The agreement, the notes and the guaranty agreements are referred to collectively as the "loan documents."

2. While the precise language differs from document to document, all the waiver clauses are broad in their scope.

3. PNC argues that there were defaults and these occurrences resulted in the forbearance agreements. Academy, on the other hand, maintains that there was no default and that it entered into the forbearance agreements as a result of pressure by PNC.

ruptcy. This petition in bankruptcy was later dismissed due to Academy's inability to establish a plan of reorganization.

After the dismissal of Academy's bankruptcy petition, PNC hired Fulcrum and McDonald to work with Academy to maximize a return on its assets and, if warranted, to sell Academy or its assets. In May 2000, most of Academy's personal property was sold at a public auction, with the proceeds being applied to the loans. According to PNC, Academy's real property remains titled in Academy's name, and a balance of $1.18 million remains outstanding on the loans.

On May 16, 2000, the respondents (Academy Industries Inc. et al.) filed the first of the above-captioned actions against the petitioners (PNC Bank N.A. et al.) for breach of contract, intentional interference with contractual relations, breach of fiduciary duty and declaratory relief. Each of these claims relates to PNC's actions taken in connection with the declaration of default and the sale of Academy's assets. PNC confessed judgment against Academy on July 7, 2000 under the revolving loan note and the mortgage note. Academy subsequently filed a petition to open the judgment, a move PNC has opposed. The two actions were consolidated on October 19, 2000.

On November 30, 2000, the petitioners filed this motion.

## DISCUSSION

The waivers are valid, and these actions fall within their scope. Accordingly, the motion to strike the demand for a jury trial will be *granted.*

Under Pennsylvania law, the right to trial by jury may be waived by express agreement. *Ottavio v. Fibreboard Corp.,* 421 Pa. Super. 284, 289, 617 A.2d 1296, 1299 (1992); *Stock v. Arnott,* 415 Pa. Super. 113, 122, 608 A.2d 552, 556 (1992). Here, under the waivers' plain language, the respondents have waived the right to demand a jury trial for any action related to the loans.[4] The respondents, however, argue that the waivers are invalid because they were not made knowingly and voluntarily.

Federal cases interpreting the right to a trial by jury[5] have applied a strict test to determine whether a waiver is valid:

"The Seventh Amendment right to a jury trial can only be surrendered through a knowing and voluntary waiver. In deciding whether a waiver is knowing and intelligent, a court may consider: (1) whether there exists gross dis-

---

4. Each of the waivers is broad and applies to any action having any relation to the loans. As each of the parties' claims bears a significant connection to the loans, there can be no doubt that the provision applies. See *Today's Man Inc. v. Nationsbank N.A.,* no. civ. a. 99-479, 2000 WL 822500 (E.D. Pa. June 22, 2000) (finding that plaintiff's claims fell within the "sweeping" language of the waiver of the right to trial by jury); *Curtis Ctr. Ltd. Partnership v. Sumitomo Trust & Banking Co.,* civ. a. no. 95-1465, 1995 WL 365411 (E.D. Pa. June 15, 1995) (same).

5. In general, "the Seventh Amendment is applicable only to federal court proceedings." *Wertz v. Chapman Twp.,* 559 Pa. 630, 636 n.3, 741 A.2d 1272, 1275 n.3 (1999). See also, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 719 (1999) (United States Constitution Seventh Amendment does not apply to suits in state courts). However, Pennsylvania courts have found interpretations of the Seventh Amendment persuasive when addressing the right to a jury trial under Article 6, Section 1 of the Pennsylvania Constitution. See *Nealy v. State Farm Mutual Automobile Insurance Co.,* 695 A.2d 790, 793 (Pa. Super. 1997) (relying on several federal court cases addressing Seventh Amendment right to jury trial).

parity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had the opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was conspicuous. A voluntary waiver may be inferred from the circumstances surrounding the agreement, and the party seeking to enforce the waiver bears the burden of proof."[6] *Phoenix Four Grantor Trust #1 v. 642 N. Broad St. Assocs.,* no. civ. a. 00-597, 2000 WL 1717261 at *2 (E.D. Pa. Nov. 15, 2000).

Application of this four-prong test here dictates that the respondents' arguments must fail. Each of the waivers was set forth entirely in capital letters in a separate paragraph. Indeed, in several of the loan documents, the waiver was in large, boldface type and was placed immediately above the signature line. The allegedly overwhelming size of the documents is equally unconvincing, in that each of the notes is no more than two pages long. In sum, this court submits that the waivers are conspicuous.[7]

---

6. As to this last item, it is important to note that there is no consensus as to which party bears the burden of proof in arguing the validity of a jury trial waiver. Compare *Leasing Service Corp. v. Crane,* 804 F.2d 828, 833 (4th Cir. 1986) (burden is on party seeking to uphold the waiver of the right to a jury trial) with *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 758 (6th Cir. 1985) (burden is on party seeking to invalidate contractual agreement waiving right to jury trial). See *Luis Acosta Inc. v. Citibank N.A.,* 920 F. Supp. 15, 18 (D.P.R. 1996) (noting federal circuit courts' split as to burden of proof).

In this case, however, the burden of proof was not controlling in this court's decision.

7. To the extent that the respondents' argument can be distilled into the simple assertion that they did not read the agreement, it is singularly unimpressive: "in the absence of fraud, the failure to read a contract before signing it is 'an unavailing excuse or defense and cannot

This court also believes that the respondents had the business experience necessary to be aware of the waivers. The summary prepared by Academy in anticipation of the loans details the extensive education and experience of its principals, including Kaufman and Polsky. In addition, the respondents appear to have had the benefit of counsel. Robert S. Dubin, a third Academy principal, has a law degree, a master of laws and nearly three decades of "extensive" business experience. This is sufficient to convince this court that the respondents had more than adequate business and professional experience.

Similarly, a disparity in bargaining power and lack of opportunity for negotiation cannot be found here. The circumstances described by respondents amount to nothing more than the conditions under which many commercial transactions typically are consummated. The immediate necessity of completing the loan transaction was imposed by a third party under terms consented to by Academy, and thus does not constitute grounds for claiming disparate bargaining power with PNC.

Moreover, the fact that PNC used its right to confess judgment to coax the execution of the forbearance agreements does not establish a disparity in bargaining power. To hold otherwise would be to invalidate countless busi-

---

justify an avoidance, modification or nullification of the contract;' it is considered 'supine negligence.' " *Germantown Savings Bank v. Talacki,* 441 Pa. Super. 513, 521, 657 A.2d 1285, 1289 (1995) (finding that confession of judgment provision in the same size type as the rest of the nine-page document was adequate). Moreover, there is no support for the respondents' creative argument that the waivers should have specified that the right to a jury trial is constitutional in nature and should have stated that the respondents had right to a jury trial for breach of contract claims.

ness transactions and effectively preclude PNC from ever negotiating with a borrower while it held confession of judgment power. Accordingly, any disparity in bargaining power or lack of opportunity for negotiation in this situation is nothing outside the ordinary and, to the extent that it was present, can be attributed to Academy and its zeal to conclude the transaction for which the loans were promised.

Based on the above, this court submits that the waivers were knowing and voluntary. The waivers are valid. The motion should be granted and the respondents' jury trial demand stricken. Accordingly, a contemporaneous order will be entered striking the jury trial demand.

## ORDER

And now, January 30, 2001, upon consideration of the motion to strike the demand for a jury trial filed by petitioners (PNC Bank N.A., Herbert McDonald and The Fulcrum Group) and respondent's opposition to it, and in accord with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered that the petitioner's motion to strike respondents' demand for a jury trial is granted.